**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------X

TAMARA WILSON, *individually and on*          :          Case No.: 21-cv-11228-JSR
*Behalf of all others similarly situated*,          :
                                                                      :
                    Plaintiff,          :
                                                                      :
          v.          :
                                                                      :
TRILLER, INC., a Delaware corporation,          :
                                                                      :
                    Defendant.          :
                                                                      :
------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S CLASS ACTION COMPLAINT**

**BAKER & HOSTETLER LLP**

Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212-589-4200
Fax: 212-589-4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
Tel: 407-649-4088
Fax: 407-841-0168
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (*pro hac vice*)
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
Tel: 312-416-6200
Fax: 312-416-6201
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Triller, Inc.*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

STANDARD OF REVIEW ....................................................................................5

ARGUMENT ..........................................................................................................5

    I.    Plaintiff Fails to State a Claim for Violation of the Computer Fraud and Abuse Act.........................................................................................................5

        A.    The CFAA Does Not Apply to the Conduct Alleged by Plaintiff. ...........6

        B.    Even if the CFAA Applies, Plaintiff Fails to State a Claim for Violation of the CFAA.............................................................................6

    II.    Plaintiff Fails to State a Claim for Violation of the Video Privacy Protection Act............................................................................................................9

        A.    Triller Does Not Disclose Personally Identifiable Information. .................9

        B.    Plaintiff Did Not Suffer an Injury Under the VPPA or Within the VPPA's Zone-Of-Interests.........................................................................12

        C.    The VPPA Does Not Provide a Private Right of Action for Failure to Destroy Information...................................................................................16

    III.    Plaintiff Fails to State a Claim for Unjust Enrichment. ..........................17

    IV.    Plaintiff Fails to State a Claim for Violation of the Illinois Consumer Fraud Act...................................................................................................................18

        A.    Plaintiff's IFCA Claim Fails to State a Claim Because the ICFA Does Not Have Extraterritorial Effect...............................................................18

        B.    Plaintiff Fails to State an ICFA Claim Because Plaintiff Is Not a Protected "Consumer" Under the ICFA. ..................................................19

        C.    Plaintiff Fails to Sufficiently Plead the Elements of Her ICFA Claim......19

    V.    Plaintiff Agreed to Limit Triller's Liability Related to Her Use of Triller...........21

CONCLUSION......................................................................................................23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Volkswagen Grp. Of Am., Inc.*,
No. 19 C 6148, 2021 WL 4146870 (N.D. Ill. Sept. 13, 2021)................................19

*Alleyne v. Four Seasons Hotel--New York*,
No. 99 CIV. 3432 (JGK), 2001 WL 135770 (S.D.N.Y. Feb. 15, 2001), *aff'd
sub nom. Alleyne v. Four Seasons Hotel New York,* 25 F. App'x 74 (2d Cir.
2002) ................................................................................................................21

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc*.,
106 N.E.3d 1176 (2018)...................................................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................5

*Bank of Am. Corp. v. City of Miami*
137 S. Ct. 1296 (2017).......................................................................................15

*Bartnett v. Abbott Lab'ys*,
492 F. Supp. 3d 787 (N.D. Ill. 2020) ................................................................20

*BCBSM, Inc. v. Walgreen Co*.,
512 F. Supp. 3d 837 (N.D. Ill. 2021) ................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................5, 9

*Benson v. Fannie May Confections Brands, Inc*.,
944 F.3d 639 (7th Cir. 2019) ............................................................................21

*Bose v. Interclick, Inc*.,
No. 10 Civ. 9183 (DAB), 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011) ...............8

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ............................................................................21

*Cenveo, Inc. v. Rao*,
659 F. Supp. 2d 312 (D. Conn. 2009)..................................................................7

*Chambers v. Time Warner, Inc*.,
282 F.3d 147 (2d Cir. 2002)................................................................................5

*Cox v. NAP Constr. Co., Inc.*,
    10 N.Y.3d 592 (2008) ..............................................................................................17

*Daniel v. Cantrell*,
    375 F.3d 377 (6th Cir. 2004) ...................................................................................16

*Duane Reade v. 405 Lexington, L.L.C.*,
    22 A.D.3d 108 (1st Dep't 2005) ...............................................................................21

*Dubey v. Public Storage, Inc.*,
    395 Ill. App. 3d 342 (2009) .....................................................................................19

*Eichenberger v. ESPN, Inc.*,
    C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015).......................................10

*Ellis v. Cartoon Network, Inc.*,
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d
    1251 (11th Cir.2015)................................................................................................10

*Fairstein v. Netflix, Inc.*,
    No. 20-CV-8042 (PKC), 2021 WL 3501527 (S.D.N.Y. Aug. 9, 2021) .....................5

*Fink v. Time Warner Cable*,
    810 F. Supp. 2d 633 (S.D.N.Y. 2011)........................................................................8

*Green v. Dep't of Educ. of City of New York*,
    No. 20-3785-CV, 2021 WL 5022654 (2d Cir. Oct. 29, 2021)....................................5

*Himmelstein v. Matthew Bender & Co. Inc.*,
    No. 650932/2017, 2018 WL 984850 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 6, 2018) .....................17

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......................10

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ...................................................................................21

*Koenig v. Boulder Brands, Inc.*,
    995 F. Supp. 2d 274 (S.D.N.Y. 2014).......................................................................17

*Landau v. CAN Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. Ct. 2008) ........................................................................18

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014)...........................................................................................14, 15

*Locklear v. Dow Jones & Co.*,
   101 F. Supp. 3d 1312 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d
   1251 (11th Cir.2015)................................................................................................10

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ...............................................................................15

*Mulligan v. QVC, Inc.*,
   321 Ill.Dec 257, 888 N.E.2d ...................................................................................21

*In re Nickelodeon Consumer Privacy Litig.*,
   827 F.3d 262 (3d Cir. 2016)......................................................................................9

*In re Nickelodeon Consumer Privacy Litig.*,
   2014 WL 3012873 (D.N.J. July 2, 2014)................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ...................................................................................20

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015)........................................................9, 10, 11, 15

*Rodriguez v. Sony Computer Ent. Am., LLC*,
   801 F.3d 1045 (9th Cir. 2015) ................................................................................16

*Roppo v. Travelers Cos.*,
   100 F. Supp. 3d 636 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v.
   Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017) ........................................19

*Tulger Contracting Corp. v. Star Bldg. Sys., Inc.*,
   No. 01 CIV.6853(JSR), 2002 WL 986994 (S.D.N.Y. May 14, 2002)...................23

*Univ. Sports Pub. Co. v. Playmakers Media Co.*,
   725 F. Supp. 2d 378 (S.D.N.Y. 2010)....................................................................6, 7

*Vulcan Golf, LLC v. Google Inc.*,
   552 F. Supp. 2d 752 (N.D. Ill. 2008) .....................................................................18

*Walker v. S.W.I.F.T. SCRL*,
   491 F. Supp. 2d 781 (N.D. Ill. 2007) ......................................................................18

*Welenco, Inc. v. Corbell*,
   126 F. Supp. 3d 1154 (E.D. Cal. 2015)......................................................................6

**Statutes**

815 ILCS § 505, *et. seq.*.............................................................................................2

815 ILCS § 505/1(e) ...................................................................................................19

815 ILCS § 505/2 ........................................................................................................20

18 U.S.C.A. § 1030(e)(11) ..........................................................................................8

18 U.S.C. § 1030, *et. seq.* .........................................................................................1

18 U.S.C. § 1030(a)(2)(C) .......................................................................................6, 7

18 U.S.C. § 1030(c)(4)(A)(i) .......................................................................................7

18 U.S.C. § 1030(c)(4)(A)(i)(I) ...................................................................................8

18 U.S.C. § 1030(g) ...............................................................................................7, 8

18 U.S.C. § 2710, *et. seq.* .........................................................................................2

18 U.S.C. § 2710 .......................................................................................................12

18 U.S.C. § 2710(c) ..................................................................................................16

18 U.S.C. § 2710(a)(3) ................................................................................................9

18 U.S.C. § 2710(b)(1) .........................................................................................15, 17

18 U.S.C. § 2710(c)(1) ..............................................................................................17

18 U.S.C. § 2710(c)(1)-(2) ........................................................................................13

18 U.S.C. § 2710(e) ..................................................................................................17

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................20

Fed. R. Civ. P. 12(b)(6) ..........................................................................................1, 23

**Other Authorities**

Sen. Rep. 100–599 (1988) .........................................................................................15

Defendant Triller, Inc. ("Triller") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Class Action Complaint (Dkt. 1) (the "Complaint" or "Compl.") for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Triller operates a free Application ("App") for creating and viewing videos online. Plaintiff Tamara Wilson is an Illinois resident who signed up for Triller and viewed videos on Triller for about six months.  Plaintiff asserts several causes of action based on conclusory allegations that Triller discloses its users' video viewing information to Triller's corporate affiliates, Facebook and Appsflyer, without adequately posting notice of such disclosures to users in its Terms of Service and Privacy Policy (collectively, the "Terms").  But these conclusory allegations are contradicted by more specific allegations made or incorporated by reference in the Complaint: (1) by Plaintiff's own allegations, Triller did not share her personally identifiable information, and (2) Plaintiff accepted Triller's Terms when she signed up for a Triller account, which expressly provide that Triller may collect and share Plaintiff's viewing history.  Additionally, Plaintiff has failed to allege facts to support necessary elements of each of her claims.

Plaintiff's First Claim, alleging a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.* ("CFAA"), fails because the CFAA is a criminal statute, with a small exception for civil suits brought in response to "hacker-type" scenarios.  Plaintiff does not allege any hacking, or even that Triller breached, much less accessed, her device in any manner.  Rather, the only allegation regarding her device is that Plaintiff voluntarily downloaded the App to her device for her own use, but even then, she fails to adequately allege that she suffered any economic damage or loss to her device.

1

Plaintiff's Second Claim, alleging a violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et. seq.*  ("VPPA"), fails because, amongst other reasons, Plaintiff does not allege any facts that Triller disclosed her personally identifiable information ("PII").  Rather, as discussed below, all of the allegedly shared information is anonymous and not traceable to Plaintiff.

Plaintiff's Third Claim for unjust enrichment is based on the alleged retention of profits that Plaintiff claims Triller should have expended to protect her data.  That claim fails because a plaintiff cannot recover under an unjust enrichment theory where a contract governs the dispute.  Plaintiff agreed to Triller's Terms when she created her account and, therefore, the Terms—which provide that Triller may disclose her data to third parties—govern this dispute.

Plaintiff's Fourth Claim, alleging a violation of the Illinois Consumer Fraud Act, 815 ILCS § 505, *et. seq.* ("ICFA"), fails to state a valid claim for several reasons.  First, the ICFA does not have extraterritorial effect and Plaintiff fails to allege that any of Triller's actions took place in Illinois. Second, Plaintiff is not a consumer under the ICFA because  Plaintiff did not make a purchase, much less spend any money, to use Triller.  Third, Plaintiff fails to adequately allege she was deceived because Triller provided notice of its third-party sharing policy in its Terms.  Finally, Plaintiff fails to adequately plead any damages because, under the ICFA, she must allege that Triller's deception caused her to pay more than the actual value of the property—which she does not and cannot allege because, again, Triller's App is free to use.

Plaintiff has not stated any claim upon which relief can be granted and, accordingly, the Complaint should be dismissed in its entirety and with prejudice.

## **BACKGROUND**

On December 31, 2021, Plaintiff, who alleges that she is a citizen of Illinois, filed a putative class action against Triller.  Plaintiff alleges that she created a Triller account and used it for approximately six months to view, like, and comment on videos, and to send messages to other

users regarding their videos but did not upload or post any videos herself.  (Compl. ¶¶ 4-6.) Plaintiff alleges that, although she does not remember seeing the Terms, upon signing up for an account, a user is presented with a screen with a disclosure that states "[b]y signing up you accept the terms of service [hyperlink] and privacy policy [hyperlink]" displayed directly below the options for sign-up.  (Compl. ¶¶ 7, 31 32.)

The Terms, which are incorporated by reference into the Complaint, (Compl. at p. 16), make the specific disclosure that Triller collects "(i) times and dates and the extent of your usage of the Platform . . . (iv) the User Accounts and/or User Content you view, like comment on, share, follow, message, add memes to, and otherwise interact with, as well as the foregoing that other Users do with respect to your Account and/or User Content; (v) usage history such as areas and pages within the Platform that you access or use and/or which buttons in the Platform you click on . . . (ix) other device and Platform access information such as your browser type, operating system, IP address, referring/exit pages, and other unique device identifiers . . . ."  (*See* Declaration of M. Darren Traub ("Traub Decl.") at Ex. 1, Privacy Policy, Section 1. Information We Collect and Receive; *see also* Traub Decl., at Ex. 2, Terms of Service ("[t]hese terms of service and all other terms and conditions or documents incorporated by reference herein, including, without limitation, our Privacy Policy (collectively, the 'Terms of Service'), constitute a legal binding agreement between Company and each registered or unregistered end user . . . .").)  Triller's Terms provided further notice that it may share the information collected from users with external parties "regarding traffic on the Platform, including pages viewed, content interacted with, and actions taken by Users when visiting the Platform".  (*See* Traub Decl., Ex. 1, Section 8, Sharing Your Information.)  Triller's Terms also provided users with rights regarding their personal information, including the right to access to a copy of the personal information retained, and the right to request

3

proper rectification, removal or restriction of a user's personal information.  (*See* Traub Decl., Ex. 1, Section 14, Your Rights; *see also* Traub Decl., Ex. 2, Acceptance of Terms; Modification of Terms ("if any provision of these terms of service or any future changes are unacceptable to you, do not use or continue to use the platform . . . . Your continued use of the platform following the posting of any notice of any change to these terms of service shall constitute your acceptance and agreement to such change."))

Plaintiff alleges that Triller unlawfully shared her information with third parties Appsflyer and Facebook.  (Compl. ¶ 38.)  Specifically, Plaintiff alleges the following information is shared with third-parties: (1) UserId ("UID"), (2) advertiser_id, (3) video user name, (4) video_id, (5) the user's country, (6) the user's time zone, (7) and video watch data such as when a video is loaded, played, liked, and when another user's profile is visited.  (Compl. ¶¶ 42, 46, 47, 53, 54, 57.) Plaintiff does not allege, however, that Triller shared information that actually identifies her.

Based on these allegations, Plaintiff brings claims for: (1) violation of the CFAA; (2) violation of the VPPA; (3) unjust enrichment; and (4) violation of the ICFA. Plaintiff seeks to pursue her claims on behalf of a "Nationwide Class" defined as "[a]ll persons who reside in the United States who used the Triller App," and two alternative subclasses: (1) the "Multistate Consumer Protection Class" defined as "[a]ll persons who reside in Illinois or any state with materially similar consumer protection laws who used the Triller App" and (2) the "Illinois Subclass" defined as, "[a]ll persons who reside in Illinois and used the Triller App to view and/or create one or more videos."  (Compl. ¶ 84.)

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint is also "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Green v. Dep't of Educ. of City of New York*, No. 20-3785-CV, 2021 WL 5022654, at *4 (2d Cir. Oct. 29, 2021). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002); *Fairstein v. Netflix, Inc.,* No. 20-CV-8042 (PKC), 2021 WL 3501527, at *2 (S.D.N.Y. Aug. 9, 2021). Here, because Plaintiffs' Complaint explicitly references Triller's Terms applicable to Plaintiff but does not include the full text of the Terms, this Court can, and should, consider their entirety when ruling on Triller's Motion to Dismiss.

## ARGUMENT

### I.    Plaintiff Fails to State a Claim for Violation of the Computer Fraud and Abuse Act.

Plaintiff fails to state a claim for violation of the CFAA because the CFAA does not apply to the alleged conduct. The CFAA is a computer hacking statute that is inapplicable to the circumstances alleged in the Complaint in which Plaintiff alleges that she voluntarily used an

application on Triller's own platform.  Even assuming the CFAA could apply, Plaintiff has not adequately pled the elements necessary to bring a civil suit.

A.   The CFAA Does Not Apply to the Conduct Alleged by Plaintiff.

The CFAA does not apply to the conduct alleged by Plaintiff because, at most, she alleges only that Triller misappropriated her information.  "[T]he plain language of the CFAA targets the unauthorized procurement or alteration of information, **not its misuse or misappropriation."** *Welenco, Inc. v. Corbell*, 126 F. Supp. 3d 1154, 1168 (E.D. Cal. 2015) (emphasis added).  "The definition of 'loss' itself makes clear Congress's intent to restrict civil actions under subsection (I) to the traditional computer 'hacker' scenario—where the hacker deletes information, infects computers, or crashes networks."  *Id.* at 1169; *see also Univ. Sports Pub. Co. v. Playmakers Media Co.*, 725 F. Supp. 2d 378, 383 (S.D.N.Y. 2010).  There are no allegations that Triller breached security protocols to obtain the information or accessed any files to which it did not have rightful access.  Rather, Plaintiff argues only that Triller wrongfully shared Plaintiff's App usage data with third parties.  (Compl. ¶¶ 38, 99.)

The CFAA simply does not apply to the conduct alleged by Plaintiff and, accordingly, this claim should be dismissed with prejudice.

B.   Even if the CFAA Applies, Plaintiff Fails to State a Claim for Violation of the CFAA.

Even if the CFAA did apply, Plaintiff fails to sufficiently allege that Triller exceeded its authorized access to Plaintiff's computer or the economic loss to Plaintiff or damage to Plaintiff's computer necessary for a civil CFAA claim.  To state a claim for a violation of the CFAA, Plaintiff must allege that Triller: (1) surreptitiously collected, stored or used; (2) Plaintiff's personally identifiable information; (3) without prior disclosure and consent; and (4) in doing so, Triller knowingly exceeded its authorized access to Plaintiff's computer.  18 U.S.C. § 1030(a)(2)(C).

Further, to bring a civil claim under the CFAA, Plaintiff must plead damage or loss and one of the factors set forth in subclauses (I)-(V) of 18 U.S.C. § 1030(c)(4)(A)(i).  18 U.S.C. § 1030(g).

First, Plaintiff fails to state a CFAA violation because Plaintiff fails to sufficiently allege that Triller exceeded its authorized access to Plaintiff's computer.  The CFAA defines "exceed[ing] authorized access" as "access[ing] a computer with authorization and ... us[ing] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Cenveo, Inc. v. Rao*, 659 F. Supp. 2d 312, 316 (D. Conn. 2009); *see also Univ. Sports*, 725 F. Supp. 2d at 384 (courts have construed the definition of "exceeds authorized access" to apply to a person who uses a limited level of initial access to obtain other, more highly protected information that she is not entitled to access).  In *Cenveo*, the court held that in the absence of sufficient factual allegations that the defendant accessed confidential information that was "in a computer," or even that plaintiff's confidential information was ever stored "in a computer," the complaint lacked facial plausibility that defendant exceeded her authorized access. *Cenveo, Inc*., 659 F. Supp. 2d at 316-17.

Likewise, here, Plaintiff fails to allege that Triller accessed Plaintiff's computer when it sent the alleged user information to third parties.  Rather, Plaintiff alleges that "Triller transmits the UID and advertiser_id to Facebook and Appsflyer, along with other personal information while a user is logged on to the platform."  (Compl. ¶ 42.)  This data is created when a user uses the Triller app; it is not personal information that is from Plaintiff's computer.  Triller had rightful access to obtain the information from its own servers because it was information collected and stored by Triller, as disclosed in its Terms; the information did not come from Plaintiff's computers, as required under the CFAA. *See* 18 U.S.C. § 1030(a)(2)(C) (prohibiting intentional access to a computer without authorization or exceeding authorized access, and thereby obtaining

information *from any protected computer*).  Plaintiff's CFAA claim, therefore, must be dismissed

with prejudice because Plaintiff has not pled, and cannot plead, that Triller exceeded its authorized

access to the data Plaintiff alleges was shared.

Second, Plaintiff fails to state a CFAA violation because Plaintiff fails to allege economic

loss to Plaintiff or Plaintiff's computer, or other injury required under the statute.  To state a civil

claim under the CFAA, Plaintiff must plausibly allege one of the following factors:

> (I) loss to 1 or more persons during any 1-year period (and, for purposes of an
> investigation, prosecution, or other proceeding brought by the United States only,
> loss resulting from a related course of conduct affecting 1 or more other protected
> computers) aggregating at least $5,000 in value;
> (II) the modification or impairment, or potential modification or impairment, of the
> medical examination, diagnosis, treatment, or care of 1 or more individuals;
> (III) physical injury to any person;
> (IV) a threat to public health or safety;
> (V) damage affecting a computer used by or for an entity of the United States
> Government in furtherance of the administration of justice, national defense, or
> national security; or
> (VI) damage affecting 10 or more protected computers during any 1-year period.

18 U.S.C. § 1030(c)(4)(A)(i)(I); 18 U.S.C. § 1030(g).

Damages for a violation of section (I) are limited to economic damages.  "Loss" under the

CFAA has been measured by the amount expended to "restore[] ... [the] data, program, system, or

information to its condition prior to" the violation.  *Fink v. Time Warner Cable*, 810 F. Supp. 2d

633, 641 (S.D.N.Y. 2011) (citing 18 U.S.C.A. § 1030(e)(11)); *see also Bose v. Interclick, Inc*., No.

10 Civ. 9183 (DAB), 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) (finding the failure to

include specific allegations as to the cost of repairing or investigating the alleged damage to the

computer fatal to CFAA claim).  Plaintiff fails to plead that she has suffered *any* economic loss to

restore any data, program, system, or information – much less damages aggregating at least $5,000

in value.  Further, Plaintiff fails to allege any damage to her device, as necessary under section

(VI).  Rather, Plaintiff alleges in conclusory fashion that "Triller's actions caused injuries to users

because of the numerous threats to public safety caused by Triller's surreptitious violations of user privacy. . ." (Compl. ¶ 101.) Plaintiff, however, does not allege any facts whatsoever about purported "threats to public safety," much less allegations that rise above the "speculative level" necessary to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Plaintiff's CFAA claim, therefore, must be dismissed for failure to allege any economic loss or damage to any user's devices.

## II.     Plaintiff Fails to State a Claim for Violation of the Video Privacy Protection Act.

Plaintiff fails to state a claim for violation of the VPPA because: (1) Plaintiff does not allege that Triller disclosed her PII; (2) Plaintiff did not suffer a harm within the zone of interest that the VPPA is intended to prevent because Triller provided written notice to and obtained written consent from Plaintiff to share information with third parties; and (3) there is no independent right of action under the VPPA for failure to destroy user's information.

### A.     Triller Does Not Disclose Personally Identifiable Information.

Plaintiff fails to state a claim for violation of the VPPA quite simply because she has not alleged, and cannot allege, that Triller actually disclosed PII. The VPPA states that PII "includes information *which identifies a person* as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). The VPPA thus prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); *see also In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 279 (3d Cir. 2016) (same). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in original).

9

In *Robinson v. Disney Online*, the Southern District of New York determined that the defendant (Disney) had not violated the VPPA in similar circumstances.  Plaintiff argued that Disney violated the VPPA when Disney shared plaintiff's viewing history along with an anonymized serial number to third-party (Adobe), and that this disclosure constituted PII because Adobe could identify plaintiff by "linking these disclosures with existing personal information obtained elsewhere."  *Robinson*, 152 F. Supp. 3d at 180 (internal quotations omitted).  The Southern District of New York, citing to and consistent with the overwhelming authority across the country, concluded that the PII actually disclosed "must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Id.* at 182; *see also id.* at 180 (collecting cases, including *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("[PII is] information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir.2015) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff); *Locklear v. Dow Jones & Co.,* 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir.2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII.") (quotations omitted); *Eichenberger v. ESPN, Inc.*, C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA)); *see also In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *3 (N.D. Cal. Apr. 28,

2014) (finding no violation of VPPA because information sent was not personally identifiable without the receiver doing more, such as visiting the user's Hulu profile to uncover the user's identity, where Hulu sent receiver: (1) the Hulu user's unique numerical Hulu User ID; (2) the "GUID," a long alphanumeric string that Hulu used to differentiate between web browsers and that Hulu assigned at random to a browser when it accessed hulu.com; (3) the Hulu "Ad ID," a unique six-digit number that identifies only the advertisement; and (4) the name of the program and any season or episode number.)

In rejecting an expansive view of PII, the court in *Robinson* explained: "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Robinson*, 152 F. Supp. 3d at 181. The court found that "Disney's liability turn[ed] only on whether the information it disclosed itself identified a specific person. It did not. Thus, Adobe's ability to identify Robinson by linking this disclosure with other information is of little significance." *Id.* at 184.

As in *Robinson*, Plaintiff alleges only that "a unique number ("UID") that corresponds in Triller's internal databases to [a user's handle]" along with "an event indicating the video ID and the creator handle is created and sent to both Facebook and Appsflyer." (Compl. ¶¶ 45, 50.) The actual information alleged to be shared is not PII because it is an anonymized UID along with the video viewing information such as the video creator's username and video ID. Nothing about the information identifies or can be traced to Plaintiff. Tellingly, Plaintiff does *not* allege that Triller shared her personal information such as her name, actual date of birth, or personal address – and, in fact, Plaintiff does not allege that Triller even has such information about her. The information thus alleged to be shared by Triller is not PII as properly defined in *Robinson, Ellis, In re Hulu,*

*Locklear, Eichenberger,* and *In re Nickelodeon.*  Accordingly, Triller did not make a knowing

disclosure of PII under the VPPA and Plaintiff's VPPA claim should be dismissed with prejudice.

      B.    <u>Plaintiff Did Not Suffer an Injury Under the VPPA or Within the VPPA's Zone-Of-Interests.</u>

Even if Plaintiff had or could allege that Triller disclosed her PII (she does not), Plaintiff

nevertheless fails to state a claim for violation of the VPPA because Plaintiff received written

notice and provided consent to Triller to collect and share information with third parties and,

therefore, did not suffer the injury that the VPPA was meant to prevent.  Under the VPPA, an

entity may disclose PII to "any person with the informed, written consent (including through an

electronic means using the Internet) of the consumer."  18 U.S.C. § 2710.  Plaintiff alleges that

Triller provides its Terms at user sign-up and that the sign-up page states: "By signing up you

accept the terms of service [hyperlink] and privacy policy [hyperlink]."  (Compl. ¶¶ 31-32.)

Plaintiff further alleges that she signed up for an account.  (Compl. ¶ 7.)  Although Plaintiff's

allegations show that she consented to the Terms by signing up for an account, Plaintiff fails to

mention that Triller's Terms disclosed the types of data it collects, including data that "relates to

your usage of the Platform . . . including: (i) times and dates and the extent of your usage of the

Platform . . . (iv) the User Accounts and/or User Content you view, like comment on, share, follow,

message, add memes to, and otherwise interact with, as well as the foregoing that other Users do

with respect to your Account and/or User Content; (v) usage history such as areas and pages within

the Platform that you access or use and/or which buttons in the Platform you click on . . . (ix) other

device and Platform access information such as your browser type, operating system, IP address,

referring/exit pages, and other unique device identifiers . . . ."  (*See* Traub Decl. at Ex. 1, Privacy

Policy, Section 1. Information We Collect and Receive; *see also* Traub Decl., at Ex. 2, Terms of

Service ("[t]hese terms of service and all other terms and conditions or documents incorporated by

reference herein, including, without limitation, our Privacy Policy (collectively, the 'Terms of Service'), constitute a legal binding agreement between Company and each registered or unregistered end user . . . .").)  Triller's Terms provided further notice that it may share the information collected from users with external parties "regarding traffic on the Platform, including pages viewed, content interacted with, and actions taken by Users when visiting the Platform". (*See* Traub Decl., Ex. 1, Section 8, Sharing Your Information.)  Triller's Terms also provided users with rights regarding their personal information, including the right to access to a copy of the personal information retained, and the right to request proper rectification, removal or restriction of a user's personal information.  (*See* Traub Decl., Ex. 1, Section 14, Your Rights; *see also* Traub Decl., Ex. 2, Acceptance of Terms; Modification of Terms ("if any provision of these terms of service or any future changes are unacceptable to you, do not use or continue to use the platform . . . . Your continued use of the platform following the posting of any notice of any change to these terms of service shall constitute your acceptance and agreement to such change.").)

Plaintiff alleges that, even though the notice of disclosure in Triller's Terms was given to all users who sign up, (Compl. ¶¶ 31-32, 74), Triller should be liable under the VPPA because Triller did not provide the required VPPA disclosures in a *stand-alone, separate form* and, therefore, Plaintiff is excused from reviewing them and was damaged.  (*See* Compl. ¶ 76.)  The VPPA's language allowing a civil suit requires that a person aggrieved allege they were aggrieved "by any act of a person" under the VPPA for an award of actual damages.  *See* 18 U.S.C. § 2710(c)(1)-(2).  Plaintiff has failed to allege how Triller's inclusion of the VPPA-required disclosures in its Terms, rather than in a stand-alone document, caused Plaintiff to suffer damages, especially in light of the fact that Plaintiff stated she did not even read the Terms presented to her at sign-up.  (Compl. ¶ 7.)  Indeed, Plaintiff has not alleged that she was prevented from reviewing

the Terms, did not understand them, or that they are misleading or fraudulent.  Therefore, the reasonable inference from Plaintiff's allegations is that even if Triller presented the disclosures separately, Plaintiff still would not have read them, and Plaintiff would have continued creating her Triller account.

Further, this alleged purely procedural violation is not within the zone-of-interests that Congress aimed to protect when it passed the VPPA.  The Supreme Court has held that a plaintiff cannot assert a federal statutory claim unless that plaintiff has suffered an injury falling within the "zone of interests" protected by the statute.  *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014).  The zone-of-interests test "applies to all statutorily created causes of action."  *Id.* at 129.  "Congress is presumed to legislate against the background of the zone-of-interests limitation, which applies unless it is expressly negated."  *Id.* (quotation marks and alteration omitted).  "Whether a plaintiff comes within 'the zone of interests' is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim."  *Id*. at 127 (quotation marks omitted).  "That question requires us to determine the meaning of the congressionally enacted provision creating a cause of action."  *Id.* at 128.  In so doing, the Supreme Court explained that "[w]e do not ask whether in our judgment Congress *should* have authorized [the plaintiff's] suit, but whether Congress in fact did so."  *Id.* (emphasis in original).  "[A] direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue."  *Id.* at 134.

In this case, Plaintiff ostensibly alleges that any injury suffered arises from not seeing the Terms containing the disclosures and, regardless, the required disclosures allegedly were not in a stand-alone document.  (Compl. ¶¶ 7, 114.)  Plaintiff does not allege, however, that the disclosures

14

were not given to her at all.  Quite the contrary, Plaintiff specifically admits that the Terms are provided at user sign-up.  (Compl. ¶¶ 31, 32.)

Plaintiff's alleged injuries are not within the zone-of-interest for a VPPA claim.  The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider" without prior consent.  18 U.S.C. § 2710(b)(1).  "Congress's intent in passing the VPPA . . . evinces the principle that protection is merited when the consumer lacks control over the dissemination of the information at issue."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065–66 (9th Cir. 2015); *see also Robinson*, 152 F. Supp. 3d at 179 (citing Sen. Rep. 100–599, at 5 (1988) ("Its impetus was the publication in 'a weekly newspaper in Washington' of a 'profile of Judge Robert H. Bork based on the titles of 146 films his family had rented from a video store.'")).

Plaintiff was provided with notice of, and consented to, third party disclosures upon sign-up as a Triller user.  (Compl. ¶ 4, 31.)  Congress's intent in passing the VPPA—to protect the dissemination of information that consumers lack control over—has been met.  Plaintiff fails to allege that she has suffered any actual harm from the failure to provide the required disclosures in a stand-alone document, as opposed to in the Triller Terms.  "It is a 'well established principle of [the common] law that in all cases of loss, we are to attribute it to the proximate cause, and not to any remote cause.'"  *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017) (quoting *Lexmark*, 134 S. Ct. at 1390.)  "We assume Congress 'is familiar with the common-law rule and does not mean to displace *it sub silentio*' in federal causes of action."  *Id.*  "Proximate-cause analysis is controlled by the nature of the statutory cause of action.  The question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits."  *Id.* (citing *Lexmark*, 134 S. Ct. at 1390).  Plaintiff has not alleged facts showing proximate cause

between Triller's failure to provide the required disclosures separately from its Terms and any injury within the VPPA's zone-of-interests and, for this reason, Plaintiff's VPPA claim should be dismissed.

C.   The VPPA Does Not Provide a Private Right of Action for Failure to Destroy Information.

Plaintiff fails to state a violation of the VPPA for failure to destroy Plaintiff's data, because the VPPA does not provide a private right of action for failure to destroy information.  Plaintiff alleges that, "[u]pon information and belief, Triller does not destroy this information and maintains users' personally identifiable information, despite the fact that it is no longer necessary for purposes of delivering the prerecorded visual information, in violation of the VPPA" Section 2710(e).  (Compl. ¶ 117.)

Courts have held that the VPPA does not provide a private right of action for the retention of a consumer's personal information.  *Rodriguez v. Sony Computer Ent. Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015).  The *Rodriguez* court explained that there are notable distinctions between the unlawful *disclosure* and unlawful *retention* provisions, including that "the unlawful disclosure provision explicitly provides for liability 'to the aggrieved person'" whereas "the unlawful retention provision does not specify that a video service provider is liable for the knowing retention of personal information."  *Id.* at 1050.  The *Rodriguez* court further explained that "[g]enerally, when the language of the statute is directed toward the entity being regulated, rather than the party seeking relief, we have not recognized a private right of action." *Id.* at 1051.

Moreover, unlike the specific reference to "disclosure" in the enforcement provision of section 2710(c), there is no reference to "destroying" information in the enforcement provision. *See* 18 U.S.C. § 2710(c); *see also Daniel v. Cantrell*, 375 F.3d 377, 379 (6th Cir. 2004) ("the structure of the statute makes it clear that a civil action may be brought based on only a violation

16

of section (b)" because, "[i]mmediately after section (b), section (c) discusses the rules for bringing a civil action" and "[a]fter section (c), sections (d) and (e) discuss receiving personal information into evidence and destruction of old records. If these later sections were to be a basis for liability, it would make sense that the section on civil actions would come at the end of the statute, rather than preceding these sections.").

Finally, the VPPA provides that a person "aggrieved" means a person who is harmed by a "video tape service provider who knowingly discloses" certain information.  18 U.S.C. § 2710(b)(1).  Only a person aggrieved by such disclosure has a private right of action under the VPPA.  18 U.S.C. § 2710(c)(1); 18 U.S.C. § 2710(b)(1).  Tellingly, there is no reference to a person "aggrieved" within section 2710(e).  18 U.S.C. § 2710(e).  Therefore, Plaintiff's claim that Triller violated VPPA section 2710(e) must be dismissed with prejudice because there is no private right of action for such violations.

## III.  Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff fails to state a claim for unjust enrichment because the Terms govern her dispute. "Under New York law, a plaintiff cannot recover under an unjust enrichment theory where a contract governs the subject matter of the dispute." *Himmelstein v. Matthew Bender & Co. Inc*., No. 650932/2017, 2018 WL 984850, at *6 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 6, 2018) (citing *Cox v. NAP Constr. Co., Inc*., 10 N.Y.3d 592, 607 (2008)); *Koenig v. Boulder Brands, Inc*., 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014) ("[A]n unjust enrichment claim cannot survive 'where it simply duplicates, or replaces, a conventional contract or tort claim.'") (citation omitted).  Plaintiff's claim for unjust enrichment must be dismissed because the allegations that Triller sent her information to third-parties without consent is governed, and expressly addressed, by the Terms that Plaintiff agreed to abide by when she signed up for her Triller account.  (*See generally* Traub Decl., Exs. 1 & 2.)  Plaintiff's unjust enrichment claim should, therefore, be dismissed with prejudice.

**IV.    Plaintiff Fails to State a Claim for Violation of the Illinois Consumer Fraud Act.**

Plaintiff fails to state a claim for violation of the ICFA for several reasons, including: (1) the ICFA does not have extraterritorial effect and Plaintiff does not allege that the actions took place primarily and substantially in Illinois; (2) Plaintiff is not a "consumer" under the ICFA; (3) Plaintiff cannot allege she was deceived; and (4) Plaintiff has not adequately alleged damages.

A.    <u>Plaintiff's IFCA Claim Fails to State a Claim Because the ICFA Does Not Have Extraterritorial Effect.</u>

First, Plaintiff's ICFA claim fails because the ICFA "does not have extraterritorial effect," and therefore applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *BCBSM, Inc. v. Walgreen Co*., 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021); *Landau v. CAN Fin. Corp*., 886 N.E.2d 405, 409 (Ill. App. Ct. 2008) ("[T]he majority of circumstances relating to the alleged violation of the [statute]" must have occurred in the state). Plaintiff's only allegations relating to Illinois are simply that Plaintiff and unnamed putative subclass members are residents of Illinois. (Compl. ¶ 128.) Outside of this bare conclusion, Plaintiff fails to allege any conduct on behalf of Triller that occurred in Illinois, or any other acts relating to the violation of the ICFA that occurred primarily and substantially in Illinois. *See Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (dismissing the plaintiff's ICFA claim where "the only connection to the state of Illinois [wa]s the fact that [the plaintiff] is a resident of Illinois" and stating that "[w]hile this is one factor to consider, the court finds no substantial connection to Illinois on the face of the Second Amended Complaint"); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing the plaintiffs' ICFA claim despite the fact that each was an Illinois resident and "conduct[ed] substantial business in th[e] state" because there were no "allegations that plausibly suggest[ed] that the purported deceptive domain scheme occurred primarily and substantially in Illinois."). Plaintiff's ICFA

18

claim, therefore, must be dismissed because it has no extraterritorial effect and Plaintiff fails to allege that the actions giving rise to the alleged violation occurred in Illinois.

B.    Plaintiff Fails to State an ICFA Claim Because Plaintiff Is Not a Protected "Consumer" Under the ICFA.

Next, Plaintiff is not a "consumer" as defined under the ICFA.  "Ordinarily, a plaintiff must allege that she is a 'consumer' to state a claim under the ICFA." *Roppo v. Travelers Cos.*, 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017).  "Consumer" is defined under the statute as "any person who purchases or contracts for the purchase of merchandise."  815 ILCS § 505/1(e).  Here, Plaintiff is not a consumer because Plaintiff did not make any purchase to use the Triller App.  Triller's App is completely free to use.  As such, Plaintiff did not suffer any pecuniary loss.  Therefore, Plaintiff's ICFA claim should be dismissed because Plaintiff is not a consumer to be protected under the ICFA.  *See Ali v. Volkswagen Grp. Of Am., Inc.*, No. 19 C 6148, 2021 WL 4146870, at *4 (N.D. Ill. Sept. 13, 2021) (dismissing ICFA claim where court found that plaintiff was not a consumer because plaintiff did not purchase the merchandise at issue and would be "hard-pressed to show that he personally suffered a pecuniary loss when it was destroyed.").

C.    Plaintiff Fails to Sufficiently Plead the Elements of Her ICFA Claim.

Plaintiff also fails to state a claim for violation of the ICFA because Plaintiff has not pled, and cannot plead, the necessary elements of an ICFA claim.  To state a claim for a violation of the ICFA, Plaintiff must allege that "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 335 (2009).  Further, where a plaintiff's ICFA claim alleges that defendant

unlawfully or intentionally concealed or omitted information and, therefore, sounds in fraud predicated on an omission, the plaintiff must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b).   *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011).   Under Rule 9(b), a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."   *Id*.   This is met when plaintiff describes the "who, what, where, and how" of the fraud.   *Id.* at 441-42.   To determine whether a statement is deceptive, the courts "ask if the statement 'creates a likelihood of deception or has the capacity to deceive' a reasonable consumer."   *Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 800 (N.D. Ill. 2020).   Although whether a statement is deceptive is often a question of fact, "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law."   *Bartnett*, 492 F. Supp. 3d at 801.

Plaintiff has not met the heightened pleading standard to adequately allege any deceptive conduct by omission.   Plaintiff conclusively alleges that "Triller's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include surreptitiously accessing, collecting, storing, and/or disclosing Plaintiff's and the other Illinois Subclass members' private information and data."   (Compl. ¶ 130.)   However, this conclusory allegation does not allege that Plaintiff was deceived by any acts of Triller.   Plaintiff does not allege any misrepresentations made that would make Plaintiff expect that her data is not being shared.   Rather, Plaintiff's allegation of deception is completely rebuffed by her own allegations that Triller's Terms, which specifically address this very issue, are presented to all users upon sign-up, (Compl. ¶ 31), as well as Triller's Terms providing notice that it would collect and disclose certain username information with third parties. (*See* Traub Decl., Ex. 1, Section 8, Sharing Your Information.)   Further, Plaintiff fails to plausibly allege deception because, based on the Terms,

reasonable users would understand that certain information is being shared with third parties regarding App usage.  It would be unreasonable for Plaintiff to allege that she was deceived into believing that Triller would not share App usage data when the Terms explicitly stating otherwise were presented to her at sign-up.

Plaintiff's ICFA claim also fails because she has not adequately pled damages.  A "private plaintiff suing under the ICFA must show that she "suffered 'actual damage' as a result of the defendant's violation of the act."  *Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 647 (7th Cir. 2019) (citing *Camasta v. Jos. A. Bank Clothiers, Inc*, 761 F.3d 732, 739 (7th Cir. 2014)).  "In other words, she must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss."  *Id*. (citing *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010)).  Actual loss may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'"  *Id.* Here, Plaintiff does not allege that she paid to use Triller's App and, therefore, has not pled, and cannot plead, that she paid more than the actual value of the property.  *See Kim*, 598 F.3d at 365 (citing *Mulligan v. QVC, Inc*., 321 Ill.Dec 257, 888 N.E.2d at 1197-98 (in a "private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'")).  Plaintiff's ICFA claim, therefore, should be dismissed with prejudice.

**V.      Plaintiff Agreed to Limit Triller's Liability Related to Her Use of Triller**

Plaintiff agreed to limit Triller's liability related to her use of Triller and, therefore, Plaintiff's claims must be dismissed.  In New York, "[i]t is settled that a contractual provision which limits damages will be enforced unless a special relationship exists between the parties, or a statute or public policy imposes liability despite the restrictions set forth in the contract."  *Duane Reade v. 405 Lexington, L.L.C*., 22 A.D.3d 108, 111 (1st Dep't 2005); *see also Alleyne v. Four*

*Seasons Hotel--New York*, No. 99 CIV. 3432 (JGK), 2001 WL 135770, at *17 (S.D.N.Y. Feb. 15,

2001), *aff'd sub nom. Alleyne v. Four Seasons Hotel New York,* 25 F. App'x 74 (2d Cir. 2002)

(collecting cases) ("An unambiguous contractual provision that limits the liability of a party for

the breach of a contract is enforceable unless a special relationship between the parties, a statute,

or public policy imposes liability.").  "[C]ourts must honor contractual provisions that limit

liability or damages because those provisions represent the parties' agreement on the allocation of

the risk of economic loss in certain eventualities." *Ambac Assurance Corp. v. Countrywide Home*

*Loans, Inc*., 106 N.E.3d 1176, 1184 (2018).  Each of Plaintiff's claims stem from Plaintiff's use

of the Triller App.  (*See generally* Compl. ¶¶ 96-134.)  When Plaintiff signed up for her Triller

account, she agreed to the Triller Terms of Service which included an unambiguous limitation of

liability clause that prohibits Plaintiff from holding Triller liable for any damages arising from

Plaintiff's use of the App.  (*See* Traub Decl., Ex. 2, Limitations of Liability.)  The Limitation of

Liability clause provides:

> **YOU ACKNOWLEDGE AND AGREE THAT COMPANY IS ONLY WILLING TO PROVIDE THE PLATFORM IF YOU AGREE TO CERTAIN LIMITATIONS OF OUR LIABILITY TO YOU AND THIRD PARTIES**. **THEREFORE, YOU AGREE NOT TO HOLD COMPANY**, ITS PARENTS, SUBSIDIARIES, AFFILIATES, LICENSORS, AND PARTNERS IN PROMOTIONS, SWEEPSTAKES OR CONTESTS, OR ANY OF SUCH PARTIES' RESPECTIVE AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, MANAGERS, MEMBERS, VENDORS, THIRD-PARTY LICENSORS, CORPORATE PARTNERS, PARTICIPANTS, SUCCESSORS, AND ASSIGNS (COLLECTIVELY, " COMPANY PARTIES") **LIABLE FOR ANY DAMAGE, SUITS, CLAIMS, AND/OR CONTROVERSIES (COLLECTIVELY, "LIABILITIES") THAT HAVE ARISEN OR MAY ARISE, WHETHER KNOWN OR UNKNOWN, RELATING TO YOUR OR ANY OTHER PARTY'S USE OF OR INABILITY TO USE THE PLATFORM**, INCLUDING WITHOUT LIMITATION ANY LIABILITIES ARISING IN CONNECTION WITH THE CONDUCT, ACT OR OMISSION OF ANY USER (INCLUDING WITHOUT LIMITATION STALKING, HARASSMENT THAT IS SEXUAL OR OTHERWISE, ACTS OF PHYSICAL VIOLENCE, AND DESTRUCTION OF PERSONAL PROPERTY), ANY DISPUTE WITH ANY USER, ANY INSTRUCTION, ADVICE, ACT, OR SERVICE PROVIDED BY

COMPANY OR ITS AFFILIATES OR LICENSORS AND ANY DESTRUCTION OF YOUR INFORMATION. UNDER NO CIRCUMSTANCES WILL ANY COMPANY PARTIES BE LIABLE FOR ANY DIRECT, INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY DAMAGES ARISING IN CONNECTION WITH YOUR USE OF OR INABILITY TO USE THE PLATFORM, EVEN IF ADVISED OF THE POSSIBILITY OF THE SAME.

*Id.* (emphasis added).

Each of Plaintiff's claims arise from her use of the App and Triller's various alleged statutory and common law violations for sharing Plaintiff's App usage information.  The Limitation of Liability is conspicuously and unambiguously displayed in all capital letters and contains the header "Limitations of Liability."  *See Tulger Contracting Corp. v. Star Bldg. Sys., Inc.*, No. 01 CIV.6853(JSR), 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) (finding limitation of liability clause unambiguous where header stated "Limitation of Liabilities" and text was in all caps).  Plaintiff's claims, therefore, must be dismissed because Plaintiff agreed to limit Triller's liability for any claims brought related to Plaintiff's use of Triller's App.

## **CONCLUSION**

For the foregoing reasons, Triller respectfully requests that this Court dismiss Plaintiff's Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: February 28, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Eric R. Fish*
Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
Fax: 212.589.4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
BAKER & HOSTETLER LLP
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
(407) 649-4088
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (*pro hac vice*)
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Triller, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** was served on this 28th day of February 2022, via the Court's electronic filing system on all counsel of record.

*/s/ Eric R. Fish*
