**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

TAMARA WILSON, *individually and on*    :    Case No.: 21-cv-11228-JSR
*Behalf of all others similarly situated,*    :

                                 :

           Plaintiff,            :

                                 :

       v.                     :

                                 :

TRILLER, INC., a Delaware corporation,    :

                                 :

           Defendant.        :

                                 :

-------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6)**

**BAKER & HOSTETLER LLP**

Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
Fax: 212.589.4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432
(407) 649-4088
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (*pro hac vice*)
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Triller, Inc.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................2

STANDARD OF REVIEW ................................................................................................4

ARGUMENT .....................................................................................................................5

    I.     Plaintiff Fails To State A Claim For Violation of the Video Privacy
Protection Act. ...................................................................................................5

         A.     Triller Does Not Disclose Personally Identifiable Information. .................5

    II.    Plaintiff Fails To State A Claim For Violation of the Illinois Consumer Fraud
Act. .....................................................................................................................9

         A.     Plaintiff Fails To State An ICFA Claim Because Plaintiff Is Not A
Protected "Consumer" Under The ICFA. ..................................................10

         B.     Plaintiff Fails To Sufficiently Plead The Elements Of Her ICFA
Claim. .......................................................................................................11

         C.     Plaintiff's ICFA Claim Fails To State A Claim Because The ICFA
Does Not Have Extraterritorial Effect. ......................................................14

    III.   Plaintiff Agreed To Limit Triller's Liability Related To Her Use Of Triller ........15

CONCLUSION................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ali v. Volkswagen Grp. Of Am., Inc.*,
  No. 19 C 6148, 2021 WL 4146870 (N.D. Ill. Sept. 13, 2021)................................................11

*Alleyne v. Four Seasons Hotel New York*,
  25 F. App'x 74 (2d Cir. 2002) .................................................................................................15

*Alleyne v. Four Seasons Hotel--New York*,
  No. 99 CIV. 3432 (JGK), 2001 WL 135770 (S.D.N.Y. Feb. 15, 2001) ..................................15

*Ambac Assurance Corp. v. Countrywide Home Loans, Inc.*,
  106 N.E.3d 1176 (2018) ..........................................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................................4

*Bartnett v. Abbott Lab'ys*,
  492 F. Supp. 3d 787 (N.D. Ill. 2020) ......................................................................................12

*BCBSM, Inc. v. Walgreen Co.*,
  512 F. Supp. 3d 837 (N.D. Ill. 2021) ......................................................................................14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................4, 5

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ...................................................................................................13

*Camasta*, 761 F.3d at 739 ..............................................................................................................13

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002).......................................................................................................5

*Duane Reade v. 405 Lexington, L.L.C.*,
  800 N.Y.S.2d 664 (N.Y. App. Div. 2005) ...............................................................................15

*Dubey v. Public Storage, Inc.*,
  395 Ill. App. 3d 342 (2009) .....................................................................................................11

*Eichenberger v. ESPN, Inc.*,
  C14-463, 2015 WL 7252985 (W.D. Wash. May 7, 2015)..........................................................6

*Ellis v. Cartoon Network, Inc.*,
    2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d
    1251 (11th Cir.2015) ...................................................................................................6

*Fairstein v. Netflix, Inc.*,
    No. 20-CV-8042 (PKC), 2021 WL 3501527 (S.D.N.Y. Aug. 9, 2021) ...............................5

*Green v. Dep't of Educ. of City of New York*,
    No. 20-3785-CV, 2021 WL 5022654 (2d Cir. Oct. 29, 2021) .......................................5

*In re Hulu Priv. Litig.*,
    No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ...............................6

*Kim v. Carter's Inc.*,
    598 F.3d 362 (7th Cir. 2010) ...................................................................................13

*Landau v. CAN Fin. Corp.*,
    886 N.E.2d 405 (Ill. App. Ct. 2008) .........................................................................14

*Locklear v. Dow Jones & Co.*,
    101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*,
    803 F.3d 1251 (11th Cir.2015) ...................................................................................6

*Mulligan v. QVC, Inc.*,
    321 Ill. Dec 257, 888 N.E.2d ...................................................................................13

*In re Nickelodeon Consumer Priv. Litig.*,
    827 F.3d 262 (3d Cir. 2016) ......................................................................................6

*In re Nickelodeon Consumer Privacy Litig.*,
    2014 WL 3012873 (D.N.J. July 2, 2014) ...................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ...................................................................................12

*Robinson v. Disney Online*,
    152 F. Supp. 3d 176 (S.D.N.Y. 2015) ...................................................................5, 6, 7

*Roppo v. Travelers Companies*,
    100 F. Supp. 3d 636, 650 (N.D. Ill. 2015) ...............................................................10

*Sabrina Roppo v. Travelers Com. Ins. Co.*,
    869 F.3d 568 (7th Cir. 2017) ...................................................................................10

*Serv. Corp. Int'l v. Stericycle, Inc.*,
    2020 WL 43017 (N.D. Ill. Jan. 4, 2020) ...................................................................14

*Tulger Contracting Corp. v. Star Bldg. Sys., Inc.*,
    No. 01 CIV.6853(JSR), 2002 WL 986994 (S.D.N.Y. May 14, 2002) ....................................17

*United States v. Joel Kennedy Constructing Corp.*,
    No. 17 C 03062, 2022 WL 356843 (N.D. Ill. Feb. 7, 2022)....................................................10

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ......................................................................................14

*Walker v. S.W.I.F.T. SCRL*,
    491 F. Supp. 2d 781 (N.D. Ill. 2007) ......................................................................................14

## Statutes

815 ILCS § 505..................................................................................................................... *passim*

18 U.S.C. § 1030....................................................................................................................2

18 U.S.C. § 2710.............................................................................................................1, 2, 5

## Rules

Fed. R. Civ. P. 9(b) ..............................................................................................................12

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 4, 17

## Other Authorities

LexisNexis, Public Records- SmartLink Comprehensive Person Report,
    https://advance.lexis.com/publicrecordshome/?pdmfid=1000200&crid=395a8
    a44-fa3d-4714-b175-49dbeba40f73&ecomp=bdq5k ................................................................9

Defendant Triller, Inc. ("Triller") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Amended Class Action Complaint (the "Amended Complaint" or "Am. Compl.") (Dkt. 42) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

Plaintiff's Amended Complaint does not cure the deficiencies underpinning dismissal of the claims in her original Complaint.

For the Video Privacy Protection Act, 18 U.S.C. § 2710, *et. seq.* ("VPPA") claim, Plaintiff does not allege a shred of additional information, much less personally identifying information, that Triller actually disclosed to a third party about Plaintiff.

For the Illinois Consumer Fraud Act, 815 ILCS § 505, *et. seq.* ("ICFA") claim, the same multitude of reasons exist for dismissal. First, Plaintiff is not a consumer under the ICFA because she does not allege that she made a purchase or paid any money to use Triller. Second, Plaintiff fails to adequately allege she was deceived because Triller provided notice of its third-party sharing policy in its Terms. Third, Plaintiff fails to adequately plead any damages because, under the ICFA, she must allege that Triller's deception caused her to pay more than the actual value of the property—which she does not and cannot allege because, again, Triller's App is free to use. Finally, Plaintiff still does not sufficiently allege that Triller's alleged conduct occurred substantially in Illinois to withstand dismissal based on extraterritoriality.

Plaintiff, again, has not stated any claim upon which relief can be granted and, accordingly, the Amended Complaint should be dismissed in its entirety and with prejudice.

## BACKGROUND

Triller, Inc. ("Triller") operates a free Application ("App") for creating and viewing videos online. Tamara Wilson ("Plaintiff") is an Illinois resident who alleges that she signed up for Triller and viewed videos on Triller.  Plaintiff alleges that Triller discloses its users' video viewing information to Triller's corporate affiliates, Facebook and Appsflyer, without adequately providing notice of such disclosures to users in its Terms of Service and Privacy Policy (collectively, the "Terms").

On December 31, 2021, Plaintiff, who alleges that she is a citizen of Illinois, filed a putative class action Complaint against Triller, alleging four claims including (1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.* ("CFAA"); (2) violation of the VPPA; (3) unjust enrichment; and (4) violation of the ICFA. Dkt. 1. Triller filed a 12(b)(6) Motion to Dismiss Plaintiff's Complaint in its entirety. Dkt. 34.

On April 18, 2022, the Court issued an Opinion and Order dismissing Plaintiff's CFAA and VPPA § 2710(e) claims with prejudice and dismissing all other claims without prejudice (the "Court Order"). Dkt. 41.

On May 16, 2022, Plaintiff filed an Amended Complaint against Triller. Dkt. 42 ("Am. Compl."). Plaintiff alleges that she created a Triller account and used it for approximately one hour per day from June 2020 through February 2021 to view, like, and comment on videos, and to send messages to other users regarding their videos but did not upload or post any videos herself. Am. Compl. ¶¶ 12-15. Plaintiff alleges that "when creating an account, users are prompted with a welcome screen showing the various ways to sign up for an account"—a screen which includes hyperlinks to Triller's Terms of Service and Privacy Policy. Am. Compl. ¶ 38.

The Terms, which are incorporated by reference into the Amended Complaint, (Am. Compl. at pp. 9, 18, 21), make the specific disclosure that Triller collects "(i) times and dates and the extent of your usage of the Platform . . . (iv) the User Accounts and/or User Content you view, like comment on, share, follow, message, add memes to, and otherwise interact with, as well as the foregoing that other Users do with respect to your Account and/or User Content; (v) usage history such as areas and pages within the Platform that you access or use and/or which buttons in the Platform you click on . . . (ix) other device and Platform access information such as your browser type, operating system, IP address, referring/exit pages, and other unique device identifiers . . . ." *See* Declaration of M. Darren Traub, Dkt. 35, at Ex. 1, Privacy Policy, Section 1. Information We Collect and Receive; *see also* Dkt. 35, at Ex. 2, Terms of Service ("[t]hese terms of service and all other terms and conditions or documents incorporated by reference herein, including, without limitation, our Privacy Policy (collectively, the "Terms of Service"), constitute a legal binding agreement between Company and each registered or unregistered end user . . .."). Triller's Terms provided further notice that it may share the information collected from users with external parties "regarding traffic on the Platform, including pages viewed, content interacted with, and actions taken by Users when visiting the Platform". *See* Dkt. 35, Ex. 1, Section 8, Sharing Your Information. Triller's Terms also provided users with rights regarding their personal information, including the right to access to a copy of the personal information retained, and the right to request proper rectification, removal or restriction of a user's personal information. *See* Dkt. 35, Ex. 1, Section 14, Your Rights; *see also* Dkt. 35, Ex. 2, Acceptance of Terms; Modification of Terms ("if any provision of these terms of service or any future changes are unacceptable to you, do not use or continue to use the platform . . .. Your continued use of the

platform following the posting of any notice of any change to these terms of service shall constitute your acceptance and agreement to such change.").

As in her original Complaint, Plaintiff alleges that Triller shared the following information with third-parties Appsflyer and Facebook: (1) UserId ("UID"), (2) advertiser_id, (3) video user name, (4) video_id, (5) the user's country, (6) the user's time zone, (7) and video watch data such as when a video is loaded, played, liked, and when another user's profile is visited. Am. Compl. ¶¶ 49, 54, 58, 59, 65, 66. Plaintiff does not plausibly allege that Triller actually shared with a third party any additional information about her - much less information that actually identifies her.

Based on these allegations, Plaintiff brings claims for violation of the VPPA and the ICFA. Plaintiff seeks to pursue her claims on behalf of a "Nationwide Class" defined as "[a]ll persons who reside in the United States who used the Triller App," and two alternative subclasses: (1) the "Multistate Consumer Protection Class" defined as "[a]ll persons who reside in Illinois or any state with materially similar consumer protection laws who used the Triller App" and (2) the "Illinois Subclass" defined as, "[a]ll persons who reside in Illinois and used the Triller App to view and/or create one or more videos." Am. Compl. ¶ 84.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint may not rest on "'naked assertion' devoid of 'further factual enhancement.'" *Iqbal*, 556

U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint is also "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Green v. Dep't of Educ. of City of New York*, No. 20-3785-CV, 2021 WL 5022654, at *4 (2d Cir. Oct. 29, 2021). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002); *Fairstein v. Netflix, Inc.,* No. 20-CV-8042 (PKC), 2021 WL 3501527, at *2 (S.D.N.Y. Aug. 9, 2021). Here, because Plaintiffs' Amended Complaint explicitly references Triller's Terms applicable to Plaintiff but does not include the full text of the Terms, this Court can, and should, consider their entirety when ruling on Triller's Motion to Dismiss.

## ARGUMENT

### I.   Plaintiff Fails To State A Claim For Violation of the Video Privacy Protection Act.

Plaintiff fails to state a claim for violation of the VPPA because Plaintiff does not allege that Triller disclosed her personally identifiable information ("PII") within the meaning of the VPPA.

####    A.   Triller Does Not Disclose Personally Identifiable Information.

Plaintiff continues to fail to state a claim because she has not alleged, and cannot allege, that Triller actually disclosed PII. The VPPA states that PII "includes information *which identifies a person* as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). The VPPA thus prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." *Robinson v. Disney Online*, 152 F. Supp.

3d 176, 179 (S.D.N.Y. 2015); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 279 (3d Cir. 2016) (same). "[T]he information disclosed by a video tape service provider must, at the very least, identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson*, 152 F. Supp. 3d at 179 (emphasis in original).[1]

---

[1]     In *Robinson v. Disney Online*, the Southern District of New York determined that the defendant (Disney) had not violated the VPPA in similar circumstances. Plaintiff argued that Disney violated the VPPA when Disney shared plaintiff's viewing history along with an anonymized serial number to third-party (Adobe), and that this disclosure constituted PII because Adobe could identify plaintiff by "linking these disclosures with existing personal information obtained elsewhere." *Robinson*, 152 F. Supp. 3d at 180 (internal quotations omitted). The Southern District of New York, citing to and consistent with the overwhelming authority across the country, concluded that the PII actually disclosed "must itself do the identifying that is relevant for purposes of the VPPA (literally, 'information which identifies')—not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." *Robinson*, 152 F. Supp. 3d at 182; *see also id.* at 180 (collecting cases, including *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("[PII is] information which must, without more, itself link an actual person to actual video materials."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir.2015) (PII not disclosed where the third party to whom an Android ID and viewing history were provided had to "collect information from other sources" to identify the plaintiff); *Locklear v. Dow Jones & Co.,* 101 F. Supp. 3d 1312, 1318 (N.D. Ga. 2015), *abrogated on other grounds*, 803 F.3d 1251 (11th Cir.2015) ("[A] Roku serial number, without more, is not akin to identifying a particular person, and therefore, is not PII." (quotations omitted); *Eichenberger v. ESPN, Inc*., C14–463, 2015 WL 7252985 (W.D. Wash. May 7, 2015) (allegation that Adobe "used information gathered from other sources to link plaintiff's Roku device serial number and the record of what videos were watched to plaintiff's identity" failed to state a claim for disclosure of PII under the VPPA)); *see also In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *3 (N.D. Cal. Apr. 28, 2014) (finding no violation of VPPA because information sent was not personally identifiable without the receiver doing more, such as visiting the user's Hulu profile, to uncover the user's identity, where Hulu sent receiver: the Hulu user's unique numerical Hulu User ID; (2) the "GUID," a long alphanumeric string that Hulu used to differentiate between web browsers and that Hulu assigned at random to a browser when it accessed hulu.com; (3) the Hulu "Ad ID," a unique six-digit number that identifies only the advertisement; and (4) the name of the program and any season or episode number.)

In rejecting an expansive view of PII, the court in *Robinson* explained: "If nearly any piece of information can, with enough effort on behalf of the recipient, be combined with other information so as to identify a person, then the scope of PII would be limitless." *Robinson*, 152 F. Supp. 3d at 181. The court found that "Disney's liability turn[ed] only on whether the information

In the Court Order dismissing Plaintiff's VPPA claim, the Court held that Plaintiff's allegations were not enough to find that PII was actually shared by Triller. The Court summarized Plaintiff's allegations as follows:

> According to the complaint, Triller collects and shares users' information with two of its third-party corporate affiliates, Facebook and Appsflyer. ¶ 38. Specifically, Triller allegedly assigns to each user a unique user identification number ("UID"), and every time a user visits the App, Triller transfers to its corporate affiliates certain information associated with the UID, including: (1) the user's country, (2) the user's time zone, (3) any videos the user has loaded, played or liked; (4) any user's profile that he or she has visited; and (4) certain of the user's device information. ¶¶ 42-59. Additionally, when a user visits his or her own profile, Triller allegedly pairs the UID with any data from the user's profile page, such as anything written in the "About Me" section, the URL of the photo chosen by the user as an avatar, and whether the user has a linked Instagram account (and, if so, the username for that account), a linked Snapchat account or an associated Soundcloud URL. ¶ 43.

Court Order, at 5-6. The Court noted that, "as alleged, in order to make this association, the third party must 'pair' the UID with information from a user's Triller profile page, which may or may not contain various personal information about the user, such as any information included in the 'About Me' page or a URL associated with a photograph of the user." *Id*. at 17. The Court further noted that, "[w]hile the complaint alleges what sort of information could be included on a user's profile and then ultimately disclosed to the third parties, it contains no allegation as to what information was actually included on Wilson's profile nor how that information could be used by a third party to identify Wilson. Indeed, the complaint lacks any allegation that would allow the Court to infer a 'firm and readily foreseeable' connection between the information disclosed and Wilson's identity." *Id.* at 17-18.

---

it disclosed itself identified a specific person. It did not. Thus, Adobe's ability to identify Robinson by linking this disclosure with other information is of little significance." *Id.* at 184.

Plaintiff's Amended Complaint does not overcome these deficiencies. Plaintiff does not allege that Triller shared any additional information about her. Rather, Plaintiff simply alleges that her Triller profile page included her actual name as part of the handle and her picture. Am. Compl. ¶ 11. She does not allege that Triller shared her profile page, or her username and picture with anyone.

As she did in her original Complaint, Plaintiff sets out in detail the information allegedly shared by Triller to third parties: (1) UserId ("UID"), (2) advertiser_id, (3) video user name, (4) video_id, (5) the user's country, (6) the user's time zone, (7) and video watch data such as when a video is loaded, played, liked, and when another user's profile is visited. Am. Compl. ¶¶ 49, 54, 58, 59, 65, 66. However, again, this information alleged is not PII because it is an anonymized UID along with the video viewing information such as the video creator's username and video ID. Indeed, Plaintiff does not allege that Triller provided any PII about her to third parties.

Unable to allege that Triller actually shared PII of anyone, Plaintiff focuses on hypothesizing about what steps Facebook and Appsflyer *might* do with the anonymized data. *See generally* Am. Compl. ¶¶ 73-82. Plaintiff alleges that if a third-party enters a UID into a URL – *a URL that is not provided by Triller to such third-party* - such third-party might be able to obtain additional information about a Triller user, depending on what information the Triller user actually included in his/her profile. Am. Compl.  ¶ 73. These allegations, however, do not state a claim under the VPPA because Plaintiff concedes that acquiring such hypothetical additional information requires additional steps by third parties. Consistent with the vast majority of caselaw from across the country, the Court has explained that it would follow the Third Circuit's definition of PII – in which PII is not dependent on the specific actions of the recipient of the disclosure, but rather, is

dependent on what information the disclosing party actually shares. Court Order at 16-17. Here, as in the original Complaint, Plaintiff does not allege that the information that Triller allegedly shared about Plaintiff was PII.

Moreover, as shown by Plaintiff's own allegations, even applying the minority position that PII may be recipient dependent, Plaintiff has not alleged that any third party actually applied the hypothetical URL to obtain additional information about Plaintiff – much less Plaintiff's PII.[2] Accordingly, like the original Complaint, the Amended Complaint "lacks any allegation that would allow the Court to infer a 'firm and readily foreseeable' connection between the information disclosed and Wilson's identity." Court Order at 17-18. Accordingly, Plaintiff's Amended Complaint again fails to state a claim against Triller for a violation of the VPPA because Triller did not make a knowing disclosure of PII under the VPPA. Therefore, Plaintiff's VPPA claim should be dismissed with prejudice.

II.    **Plaintiff Fails To State A Claim For Violation of the Illinois Consumer Fraud Act.**

Plaintiff's Amended Complaint fails to state a claim for violation of the ICFA for several reasons, including: (1) Plaintiff is not a "consumer" under the ICFA; (2) the ICFA does not have extraterritorial effect and Plaintiff does not sufficiently allege that the actions took place primarily and substantially in Illinois; (3) Plaintiff cannot allege she was deceived; and (4) Plaintiff has not adequately alleged damages.

---

[2]    Even if hypothetical actions of third parties determined whether something is PII (they do not), and it was inferred that third parties used the alleged URL to reach information on Plaintiff's profile (despite the lack of any allegations), it still would not be PII.  Simply finding a page containing a common name does not identify the individual. *See* LexisNexis, Public Records-SmartLink                Comprehensive                Person                Report, https://advance.lexis.com/publicrecordshome/?pdmfid=1000200&crid=395a8a44-fa3d-4714-b175-49dbeba40f73&ecomp=bdq5k (last accessed on June 7, 2022) (search of the name "Tamara Wilson" produces a warning that "more than 3000 results" have been found and forces the search to be refined with additional personal information in order to actually produce search results).

**A.**     **Plaintiff Fails To State An ICFA Claim Because Plaintiff Is Not A Protected "Consumer" Under The ICFA.**

Plaintiff cannot state a claim because she cannot allege she is a "consumer" as defined under the ICFA. "Ordinarily, a plaintiff must allege that she is a 'consumer' to state a claim under the ICFA." *Roppo v. Travelers Companies*, 100 F. Supp. 3d 636, 650 (N.D. Ill. 2015), *aff'd sub nom. Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568 (7th Cir. 2017). "Consumer" is defined under the statute as "any person who *purchases or contracts for the purchase* of merchandise." 815 ILCS 505/1(e) (emphasis added). Here, Plaintiff is not a consumer because Plaintiff did not make any purchase to use the Triller App. Triller's App is completely free to use. Plaintiff's Amended Complaint attempts to allege that Plaintiff is a consumer because "downloading the Triller App and signing up for Triller accounts were equivalent to making a 'purchase' from Triller because they used the services of a commercial entity Triller, and that commercial entity, in exchange, gathered and monetized their data . . .." Am. Compl. ¶ 153. Accepting this assertion, however, would render the term "consumer" completely meaningless and would be contrary to legislative intent. Quite literally, any interaction between a business and a person could be said to be a purchase, regardless of if money or services were exchanged. If Congress intended for any *person* to be covered by the statute, regardless of the exchange of money or services, Congress could have simply defined the statute to cover all persons. However, the ICFA defines "person" separately, thereby making it clear that a violation of the ICFA only occurs when it involves a "consumer", not just a "person". *See* 815 ILCS 505/1.

Further, accepting this assertion would render meaningless the exception to the ICFA for "non-consumers" who may assert a claim under the ICFA if they can satisfy the consumer nexus test. *See United States v. Joel Kennedy Constructing Corp.*, No. 17 C 03062, 2022 WL 356843, at *21 (N.D. Ill. Feb. 7, 2022) ("To bring an ICFA claim, 'a plaintiff must either: (1) be a 'consumer,'

or, (2) if a non-consumer, satisfy the 'consumer nexus' test, which requires the plaintiff to 'have suffered damages resulting from conduct that is either directed toward the market or otherwise implicates consumer protection concerns.'") (citation omitted). As in Plaintiff's original Complaint, however, Plaintiff utterly fails to allege that she meets the consumer nexus test.

Nonetheless, this interpretation is not supported by any case law and is also contrary to the damage's element of an ICFA claim which requires Plaintiff to prove that she paid more than the actual value of the property. No matter what information Triller allegedly takes from Plaintiff, Plaintiff only has one option—to use the App or not use the App. Because this was not a purchase, Plaintiff is unable to allege that she would have "paid less" to use the App if she knew her data was being shared, because she did not pay anything at all.

Plainly, Plaintiff did not suffer any pecuniary loss. Therefore, Plaintiff's ICFA claim should be dismissed with prejudice because Plaintiff is not a consumer to be protected under the ICFA. *See Ali v. Volkswagen Grp. Of Am., Inc.*, No. 19 C 6148, 2021 WL 4146870, at *4 (N.D. Ill. Sept. 13, 2021) (dismissing ICFA claim where court found that plaintiff was not a consumer because plaintiff did not purchase the merchandise at issue and would be "hard-pressed to show that he personally suffered a pecuniary loss when it was destroyed.").

### B.   Plaintiff Fails To Sufficiently Plead The Elements Of Her ICFA Claim.

Plaintiff also fails to state a claim for violation of the ICFA because Plaintiff has not pled, and cannot plead, the necessary elements of an ICFA claim. To state a claim for a violation of the ICFA, Plaintiff must allege that "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342, 335 (2009). Further, where a plaintiff's ICFA claim alleges that defendant unlawfully

11

or intentionally concealed or omitted information and, therefore, sounds in fraud predicated on an omission, the plaintiff must satisfy the heightened pleading standards of Fed. R. Civ. P. 9(b). *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. V. Walgreen Co.,* 631 F.3d 436, 441 (7th Cir. 2011). Under Rule 9(b), a party who alleges fraud or mistake "must state with particularity the circumstances constituting fraud or mistake." *Id*. This is met when plaintiff describes the "who, what, where, and how" of the fraud. *Id.* at 441-42. To determine whether a statement is deceptive, the courts "ask if the statement 'creates a likelihood of deception or has the capacity to deceive' a reasonable consumer." *Bartnett v. Abbott Lab'ys*, 492 F. Supp. 3d 787, 800 (N.D. Ill. 2020). Although whether a statement is deceptive is often a question of fact, "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Bartnett*, 492 F. Supp. 3d at 801.

Plaintiff has not met the heightened pleading standard to adequately allege any deceptive conduct by omission. Plaintiff conclusively alleges that "Triller's deceptive, unfair, and unlawful trade acts or practices, in violation of 815 Ill. Comp. Stat. § 505/2, include surreptitiously accessing, collecting, storing, and/or disclosing Plaintiff's and the other Illinois Subclass members' private information and data." Am. Compl. ¶ 158. However, this conclusory allegation does not allege that Plaintiff was deceived by any acts of Triller. Plaintiff does not allege any misrepresentations made that would make Plaintiff expect that her data was not being shared. Rather, Plaintiff's allegation of deception is completely rebuffed by her own allegations that Triller's Terms, which specifically address this very issue, are presented to all users upon sign-up, Am. Compl. ¶ 38, as well as Triller's Terms providing notice that it would collect and disclose certain username information with third parties. *See* Dkt. 35, Ex. 1, Section 8, Sharing Your Information. Indeed, as the Court previously found, the Terms of Service were "a valid contract

between Wilson and Triller" and "that contract governs the subject matter at issue here – that is, the collection and disclosure of Wilson's personal information associated with her use of the App…" Court Order at 27. Further, Plaintiff fails to plausibly allege deception because, based on the Terms, reasonable users would understand that certain information is being shared with third parties regarding App usage. It would be unreasonable for Plaintiff to allege that she was deceived into believing that Triller would not share App usage data when the Terms explicitly stating otherwise were presented to her at sign-up.

Plaintiff's ICFA claim also fails because she has not adequately pled damages. A "private plaintiff suing under the ICFA must show that she "suffered 'actual damage' as a result of the defendant's violation of the act." *Benson v. Fannie May Confections Brands, Inc*., 944 F.3d 639, 647 (7th Cir. 2019) (citing *Camasta*, 761 F.3d at 739). "In other words, she must plausibly plead that the deceptive or unfair act caused her to suffer actual damages, meaning pecuniary loss." *Id.* (citing *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010)). Actual loss may occur "if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'" *Id.* Here, Plaintiff does not allege that she paid to use Triller's App and, therefore, has not pled, and cannot plead, that she paid more than the actual value of the property. *See Kim*, 598 F.3d at 365 (citing *Mulligan v. QVC, Inc*., 321 Ill. Dec 257, 888 N.E.2d at 1197-98 (in a "private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'")). Plaintiff's ICFA claim, therefore, should be dismissed with prejudice.

### C.       Plaintiff's ICFA Claim Fails To State A Claim Because The ICFA Does Not Have Extraterritorial Effect.

Finally, Plaintiff's ICFA claim fails because the ICFA "does not have extraterritorial effect," and therefore applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *BCBSM, Inc. v. Walgreen Co*., 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021); *Landau v. CAN Fin. Corp*., 886 N.E.2d 405, 409 (Ill. App. Ct. 2008) ("[T]he majority of circumstances relating to the alleged violation of the [statute]" must have occurred in the state). Plaintiff's allegations relating to Illinois can be distilled down to her allegation that she lived, signed up, and used Triller in Illinois, and therefore, Triller's alleged conduct occurred in Illinois, and she was harmed in Illinois. Am. Compl. ¶¶ 4-7, 12, 55, 159.

Outside of these bare conclusions, Plaintiff fails to allege with any degree of plausibility that Triller engaged in conduct that occurred in Illinois, or any other acts relating to the violation of the ICFA that occurred primarily and substantially in Illinois. *See Walker v. S.W.I.F.T. SCRL*, 491 F. Supp. 2d 781, 795 (N.D. Ill. 2007) (dismissing the plaintiff's ICFA claim where "the only connection to the state of Illinois [wa]s the fact that [the plaintiff] is a resident of Illinois" and stating that "[w]hile this is one factor to consider, the court finds no substantial connection to Illinois on the face of the Second Amended Complaint"); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (dismissing the plaintiffs' ICFA claim despite the fact that each was an Illinois resident and "conduct[ed] substantial business in th[e] state" because there were no "allegations that plausibly suggest[ed] that the purported deceptive domain scheme occurred primarily and substantially in Illinois.").

In contrast, the weight of the factors lies outside of Illinois.  *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 856 (N.D. Ill. 2021) (citing *Serv. Corp. Int'l v. Stericycle, Inc.*, 2020 WL 43017, at *3-4 (N.D. Ill. Jan. 4, 2020)) (the factors include "(1) the claimant's residence; (2) the

defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed.") Plaintiff alleges that Triller is a Delaware corporation with its headquarters in California, and an office in New York. Am. Compl. at ¶16. Plaintiff does not allege the existence of any offices located in Illinois. The contract between Plaintiff and Triller includes a New York choice of law provision. Dkt. 35, Ex. 2, Terms of Service at 22. And complaints between Plaintiff and Triller were to be resolved in New York. *Id.* Plaintiff does not allege that the Terms were created in Illinois or that Triller made allegedly deceptive statements in Illinois. Plaintiff simply has not alleged enough to show that Triller's alleged conduct occurred "primarily and substantially in Illinois."

Plaintiff's ICFA claim, therefore, must be dismissed because ICFA has no extraterritorial effect and Plaintiff fails to sufficiently allege that the actions giving rise to the alleged violation occurred in Illinois.

### III.   Plaintiff Agreed To Limit Triller's Liability Related To Her Use Of Triller

Plaintiff agreed to limit Triller's liability related to her use of Triller and, therefore, Plaintiff's claims must be dismissed. In New York, "[i]t is settled that a contractual provision which limits damages will be enforced unless a special relationship exists between the parties, or a statute or public policy imposes liability despite the restrictions set forth in the contract." *Duane Reade v. 405 Lexington, L.L.C.*, 800 N.Y.S.2d 664, 666 (N.Y. App. Div. 2005); *see also Alleyne v. Four Seasons Hotel--New York*, No. 99 CIV. 3432 (JGK), 2001 WL 135770, at *17 (S.D.N.Y. Feb. 15, 2001), *aff'd sub nom. Alleyne v. Four Seasons Hotel New York,* 25 F. App'x 74 (2d Cir. 2002) (collecting cases) ("An unambiguous contractual provision that limits the liability of a party

for the breach of a contract is enforceable unless a special relationship between the parties, a

statute, or public policy imposes liability."). "[C]ourts must honor contractual provisions that limit

liability or damages because those provisions represent the parties' agreement on the allocation of

the risk of economic loss in certain eventualities." *Ambac Assurance Corp. v. Countrywide Home

Loans, Inc*., 106 N.E.3d 1176, 1184 (2018). Each of Plaintiff's claims stem from Plaintiff's use of

the Triller App. *See generally* Am. Compl. ¶¶ 132-165. When Plaintiff signed up for her Triller

account, she agreed to the Triller Terms of Service which included an unambiguous limitation of

liability clause that prohibits Plaintiff from holding Triller liable for any damages arising from

Plaintiff's use of the App. *See* Dkt. 35, Ex. 2, Limitations of Liability. The Limitation of Liability

clause provides:

> **YOU ACKNOWLEDGE AND AGREE THAT COMPANY IS ONLY
> WILLING TO PROVIDE THE PLATFORM IF YOU AGREE TO
> CERTAIN LIMITATIONS OF OUR LIABILITY TO YOU AND THIRD
> PARTIES**. **THEREFORE, YOU AGREE NOT TO HOLD COMPANY**, ITS
> PARENTS, SUBSIDIARIES, AFFILIATES, LICENSORS, AND PARTNERS IN
> PROMOTIONS, SWEEPSTAKES OR CONTESTS, OR ANY OF SUCH
> PARTIES' RESPECTIVE AGENTS, EMPLOYEES, OFFICERS, DIRECTORS,
> MANAGERS, MEMBERS, VENDORS, THIRD-PARTY LICENSORS,
> CORPORATE PARTNERS, PARTICIPANTS, SUCCESSORS, AND ASSIGNS
> (COLLECTIVELY, " COMPANY PARTIES") **LIABLE FOR ANY DAMAGE,
> SUITS, CLAIMS, AND/OR CONTROVERSIES (COLLECTIVELY,
> "LIABILITIES") THAT HAVE ARISEN OR MAY ARISE, WHETHER
> KNOWN OR UNKNOWN, RELATING TO YOUR OR ANY OTHER
> PARTY'S USE OF OR INABILITY TO USE THE PLATFORM**,
> INCLUDING WITHOUT LIMITATION ANY LIABILITIES ARISING IN
> CONNECTION WITH THE CONDUCT, ACT OR OMISSION OF ANY USER
> (INCLUDING WITHOUT LIMITATION STALKING, HARASSMENT THAT
> IS SEXUAL OR OTHERWISE, ACTS OF PHYSICAL VIOLENCE, AND
> DESTRUCTION OF PERSONAL PROPERTY), ANY DISPUTE WITH ANY
> USER, ANY INSTRUCTION, ADVICE, ACT, OR SERVICE PROVIDED BY
> COMPANY OR ITS AFFILIATES OR LICENSORS AND ANY
> DESTRUCTION OF YOUR INFORMATION. UNDER NO CIRCUMSTANCES
> WILL ANY COMPANY PARTIES BE LIABLE FOR ANY DIRECT,
> INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL OR EXEMPLARY
> DAMAGES ARISING IN CONNECTION WITH YOUR USE OF OR

INABILITY TO USE THE PLATFORM, EVEN IF ADVISED OF THE POSSIBILITY OF THE SAME.

*Id.* (emphasis added).

Each of Plaintiff's claim arise from her use of the App and Triller's various alleged statutory and common law violations for sharing Plaintiff's App usage information. The Limitation of Liability is conspicuously and unambiguously displayed in all capital letters and contains the header "Limitations of Liability." *See Tulger Contracting Corp. v. Star Bldg. Sys., Inc*., No. 01 CIV.6853(JSR), 2002 WL 986994, at *2 (S.D.N.Y. May 14, 2002) (finding limitation of liability clause unambiguous where header stated "Limitation of Liabilities" and text was in all caps). Plaintiff's claims, therefore, must be dismissed because Plaintiff agreed to limit Triller's liability for any claims brought related to Plaintiff's use of Triller's App.

## CONCLUSION

For the foregoing reasons, Triller respectfully requests that this Court dismiss Plaintiff's Amended Class Action Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: June 7, 2022

Respectfully submitted,

**BAKER & HOSTETLER LLP**

*/s/ Eric R. Fish*
Eric R. Fish
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
Fax: 212.589.4201
efish@bakerlaw.com

Joel Griswold (*pro hac vice*)
BAKER & HOSTETLER LLP
SunTrust Center
200 South Orange Avenue, Suite 2300
Orlando, Florida 32801-3432

(407) 649-4088
jcgriswold@bakerlaw.com

Bonnie Keane DelGobbo (*pro hac vice*)
Amy L. Lenz (*pro hac vice*)
BAKER & HOSTETLER LLP
One North Wacker Drive, Suite 4500
Chicago, Illinois 60606
(312) 416-6200 (phone)
(312) 416-6201 (fax)
bdelgobbo@bakerlaw.com
alenz@bakerlaw.com

*Attorneys for Triller, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT** was served on this 7th of June 2022, via the Court's electronic filing system on all counsel of record.

*/s/     Eric R. Fish*